UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| WEST HARTFORD INITIATIVE TO SAVE HISTORIC PROPERTY, ELLEN BURCHILL BRASSIL, JASYN SADLER, BARBARA S. SCULLY, | : : : : |
| | : |
| Plaintiffs, | : |
| | : |
| V. | : CASE NO. 3:06-CV-739 (RNC) |
| | : |
| TOWN OF WEST HARTFORD, BLUE BACK SQUARE, LLC, | : : |
| | : |
| Defendants. | : |

MEMORANDUM OPINION[1]

Plaintiffs, an organization interested in preserving certain historic resources in the Town of West Hartford, and three residents of the town, bring this action under the Connecticut Environmental Protection Act ("CEPA"), Conn. Gen. Stat. §§ 22a-16, 22a-19a, against the Town and Blue Back Square, LLC ("BBS"), the developer of a large mixed-use development in the center of the Town known as "Blue Back Square," which is already well underway.  The complaint alleges that BBS plans to demolish or substantially alter several buildings that the plaintiffs seek to have listed in the National Register of Historic Places.[2]  CEPA

_____

[1]  On August 2, 2006, I issued an oral ruling and order dismissing this action for lack of subject matter jurisdiction. This memorandum provides a fuller explanation of the reasons for the ruling.

[2]  The Secretary of the Interior has been authorized by Congress to "maintain a National Register of Historic Places composed of districts, sites, buildings, structures, and objects

creates a cause of action for declaratory and injunctive relief
to prevent "unreasonable destruction of historic structures and
landmarks of the state," which the statute defines as properties
"listed or under consideration for listing" in the National
Register, either as individual units or as part of an historic
district.  Conn. Gen. Stat. § 22a-19a.[3]  Because there is no
diversity of citizenship, the court has subject matter
jurisdiction only if the CEPA claim can be said to "arise under"
federal law for purposes of 28 U.S.C. § 1331.  After careful
consideration, I conclude that jurisdiction is lacking.

---

significant in American history, architecture, archeology,
engineering, and culture."  16 U.S.C. § 470a(a)(1)(A).  Property
may be added to the National Register by "[n]ominations prepared
under approved State Historic Preservation Programs, submitted by
the State Historic Preservation Officer and approved by the
[National Park Service]."  36 C.F.R. § 60.1(b)(3).  The National
Park Service has promulgated regulations detailing the procedure
by which State Historic Preservation Programs may submit
nominations.  See id. part 60.

    [3]  Section 22a-16 creates a cause of action for equitable or
declaratory relief to protect the environment from unreasonable
destruction.  Section 22a-19a extends this provision

>   to the unreasonable destruction of historic structures
>   and landmarks of the state, which shall be those
>   properties (1) listed or under consideration for
>   listing as individual units on the National Register of
>   Historic Places (16 U.S.C. 470a, as amended) or (2)
>   which are part of a district listed or under
>   consideration for listing on said national register and
>   which have been determined by the State Historic
>   Preservation Board to contribute to the historic
>   significance of such district.

I.  Background

    The jurisdictional issue arises in the following context. In July 2004, the West Hartford Town Council unanimously approved the development plan for Blue Back Square, a $159 million project that includes condominiums, retail shops, offices, parking garages and a large movie theatre.[4]  The plan anticipated that the Town would issue $48.8 million in bonds to help pay for the project.  In addition, the plan anticipated that the Town would convey certain property to BBS, including the Town's Board of Education Building.  In voting to approve the development plan, the Council also unanimously approved a number of related zoning applications and authorized the Town to execute a master agreement providing for the conveyance of the Education Building to BBS.  It is undisputed that the Blue Back Square project involves no federal agencies, federal funds, or federal licenses.

    Administrative appeals from the Town's zoning decisions were timely filed by plaintiff Jasyn Sandler, who owns and resides in a home near the Education Building and is a staunch opponent of the Blue Back Square project.  In April 2005, all the zoning appeals were dismissed on the merits.  See Sadler v. Town of West Hartford, Nos. CV044001119, CV044002125, CV044001448, CV044001388, 2005 WL 1155106 (Conn. Super. Ct. Apr. 22, 2005).

---

    [4]  See "Town of West Hartford," "Blue Back Square," at http://www.westhartford.com/BlueBackSquare/BlueBackSquare.htm.; "Blue Back Square," at http://www.bluebacksqure.com.

In October 2004, while the zoning appeals were pending, a referendum was held in West Hartford on whether the Town should issue the bonds and convey the Education Building, as called for by the development plan.  Approximately 60% of the voters cast ballots in favor of the project.  See Daniela Altimari et al., Voters Approve Blue Back Square, Hard Fight, High Turnout Bring Housing and Retail Plan to West Hartford, Hartford Courant, Oct. 13, 2004, at A1, available at 2004 WLNR 19938995.

Soon after the referendum, an action was commenced in Connecticut Superior Court to stop the project on the ground that the planned conveyance of the Education Building would be illegal.  The action was brought by West Farms Mall, LLC, which operates a large shopping mall not far from the center of West Hartford.  In February 2005, the action was dismissed for lack of standing.  See West Farms Mall, LLC v. Town of West Hartford, 279 Conn. 1 (2006).

On April 12, 2005, following dismissal of the action brought by West Farms Mall, LLC, the three individual plaintiffs in the present action -- Mr. Sadler, Ellen Burchill Brassil and Barbara S. Scully (who, like Mr. Sadler, reside in the Town and are deeply concerned about the fate of the Education Building and its surroundings) -- filed an eight-count complaint in Connecticut Superior Court seeking to stop the project.  See Scully v. Town of West Hartford, UWY-CV-05-4009028S (CLD) ("the Scully case").

4

Among other things, the complaint alleged that the Town had unlawfully agreed to convey the Education Building to BBS for no consideration.  The Town and BBS allege, and the plaintiffs do not deny, that the Superior Court action, which remains pending, is funded and controlled by the corporate parent of West Farms Mall, LLC, the Taubman Company.

The day after the plaintiffs filed the <u>Scully</u> case, the West Hartford Town Council voted to amend the Town's development agreement with BBS to allow construction of the project to get underway notwithstanding the pendency of litigation.  The amendment led to a second referendum on June 23, 2005.  This time, 70% of the voters approved going forward with the project. <u>See</u> Daniela Altimari & Tom Puleo, <u>Blue Back: Yes Again,</u> <u>Groundbreaking In Town Center Set For August</u>, Hartford Courant, June 23, 2005, at A1, <u>available at</u> 2005 WLNR 23571175.

On June 24, 2005, the day after the second referendum, Mr. Sadler commenced another Taubman-sponsored action in Connecticut Superior Court to prevent the Town from conveying the Education Building to BBS on the ground that the referendum was illegal. This was followed by the filing of two more such actions in July 2005 -- one by Mr. Sadler in Connecticut Superior Court against the State Traffic Commission, and the other by Mr. Sadler, Ms. Burchill and Ms. Scully in this court against the United States Secretary of Transportation.  <u>See</u> <u>Sadler v. Mineta</u>, 3:05-CV-01189

(MRK) (filed July 26, 2005).

On September 9, 2005, the Town executed the master agreement and conveyed title to the Education Building to BBS.  A few days later, the Connecticut Superior Court dismissed seven of the eight counts in the Scully case.  See 2005 WL 2650138, at *5.  The remaining count alleges that the Town acted in an arbitrary and capricious manner in approving the resolution authorizing the execution of the master agreement.  According to the plaintiffs, a trial on that count is expected to begin later this year.

The plaintiffs commenced the present action on May 12, 2006.  In their complaint, they allege that they seek to protect three historic structures -- the West Hartford Town Hall, the Noah Webster Library, and the Board of Education Building -- which comprise an "Historic District" eligible for inclusion in the National Register.  The complaint alleges that the Blue Back Square project calls for demolition of the Education Building, as well as substantial alterations to the Town Hall, Library and surrounding grounds, and that each of these activities would constitute an unreasonable destruction of an historic structure under CEPA.  The complaint seeks to prevent these activities from occurring unless and until a proper determination not to list the proposed "Historic District" has been made by the Keeper of the National Register.

The history and status of the plaintiffs' effort to have the

"Historic District" included in the National Register is not entirely clear, but the following facts appear to be undisputed. On April 13, 2005, the plaintiffs submitted to the State Historic Preservation Board ("SHPB") a request for a preliminary determination of whether the "Historic District" meets the criteria for inclusion in the Register.  One week later, the Deputy State Historic Preservation Officer, J. Paul Loether, approved the initiation of a study for the purpose of making the requested determination.  BBS filed a timely appeal.  On June 9, 2005, the SHPB unanimously affirmed Mr. Loether's decision.

On March 9, 2006, the SHPB recommended that the nomination of the "Historic District" be forwarded to the Keeper of the National Register.  However, on May 24, 2006, the State Historic Preservation Officer ("SHPO") concluded that BBS owns the Education Building for Register listing purposes.  Under the National Historic Preservation Act ("the NHPA"), 16 U.S.C. §§ 470a, et seq., and implementing regulations promulgated by the Department of the Interior, if the owner of private property -- that is, the person or entity holding "fee simple title" -- objects to its inclusion in the Register, the Keeper may determine whether the property is eligible for listing but is prohibited from listing it without the owner's consent.  See 16 U.S.C. § 470a(a)(6); 36 C.F.R. § 60.6(s); see also 36 C.F.R. § 60.3(k)(defining ownership to mean "fee simple title").

Accordingly, on June 6, the SHPO forwarded the nomination of the "Historic District" to the Keeper for a determination of eligibility only.  On July 25, the Keeper found that the "Historic District" is eligible for Register listing but returned the nomination to the SHPO due to certain defects that must be corrected before the nomination is resubmitted.

II.  Discussion

Given the limited nature of federal jurisdiction, the plaintiffs have the burden of demonstrating at the outset that the court has authority to hear this case.  Cardinal Chem. Co. v. Morton Int'l, Inc., 508 U.S. 83, 98 (1993).  In the absence of diversity of citizenship, this requires a showing that the action "arises under" federal law within the meaning of 28 U.S.C. § 1331.[5]  Unlike the vast majority of actions arising under federal law, this case does not involve a cause of action created by federal law.  Instead, plaintiffs invoke the court's jurisdiction to hear certain claims recognized under state law that require resolution of substantial questions of federal law.  See Grable & Sons Metal Products, Inc. V. Darue Eng'g. & Mfg., 125 S. Ct. 2363 (2005).

In Grable, the Supreme Court sought to clarify the standard to be applied to determine when an action based on state law

---

[5]  Section 1331 provides that "the district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."

"arises under" federal law for purposes of § 1331 due to the
presence of a disputed federal issue.  To satisfy the
requirements of § 1331, the Court stated, the federal issue must
be "a substantial one, indicating a serious federal interest in
claiming the advantages thought to be inherent in a federal
forum."  Id. at 2367.  Jurisdiction may be exercised, in other
words, only if the federal issue embedded in the state law claim
implicates a federal concern that "justif[ies] resort to the
experience, solicitude, and hope of uniformity that a federal
forum offers on federal issues."[6]  Id.  In addition to satisfying
this test, the Court stated, the federal issue must be one that
"a federal forum may entertain without disturbing any
congressionally approved balance of federal and state judicial
responsibilities."  Id. at 2368.[7]

_____

[6]  The Court recognized that "constitutional questions may
be the more likely ones to reach the level of substantiality that
can justify federal jurisdiction."  125 S. Ct. at 2371 n.7.

[7]  In Grable, the Internal Revenue Service seized the
plaintiff's property to satisfy a federal tax delinquency and
sold the property to the defendant.  See 125 S. Ct. at 2366.
Five years later, the plaintiff brought a quiet title action in
state court, alleging that the defendant's title was invalid
because the IRS had failed to provide him with written notice of
its seizure of the property in the manner required by a provision
of the Internal Revenue Code, 26 U.S.C. § 6335(a).  Id.  The
defendant removed the case to federal court, asserting that
jurisdiction was proper because the quiet title action turned on
whether the notice provision in the Code required the IRS to
effect personal service on the plaintiff, as he claimed, or only
service by certified mail, the method used by the IRS.  Id.
The Court held that removal of the case was proper because the
"meaning of the federal tax provision [was] an important issue of

9

In a more recent case, the Court observed that the authority conferred by § 1331 to decide a federal issue embedded in a state law claim is a "special and small category" of federal question jurisdiction.  Empire Healthchoice Assurance, Inc. v. McVeigh, 126 S. Ct. 2121, 2136 (2006).  The Court also indicated that an issue of federal law is more likely to qualify as substantial for purposes of § 1331 if the issue is a pure issue of law whose resolution "would be controlling in numerous other cases."  Id. at 2137.  By contrast, the Court implied, an issue that is "fact-bound and situation-specific" is less likely to provide a basis for exercising jurisdiction over a state law claim.  Id.

The Court of Appeals has construed Grable to encompass a three-part inquiry: (1) whether the claim necessarily raises a stated federal issue, (2) whether the federal issue is actually disputed and substantial, and (3) whether the court may entertain the claim without disrupting the existing balance of state and federal judicial responsibilities.  Broder v. Cablevision Sys. Corp., 418 F.3d 187, 195-96 (2d Cir. 2005).

Applying this test, the plaintiffs' claim for relief under CEPA requires them to establish that the Education Building is part of a district "under consideration for listing" in the Register.  Conn. Gen. Stat. § 22a-19a.  To meet this burden, they

---

federal law that sensibly belong[ed] in federal court," and exercising jurisdiction was unlikely to open the federal "arising under" door to other state law claims.  Id. at 2368.

must demonstrate that BBS's objection is ineffective to block
Register listing.  Their position that BBS's objection should be
regarded as ineffective rests on two claims: (1) record title to
the building was conveyed to BBS to prevent the Keeper from
listing the "Historic District" in the Register after the SHPB
had approved it for a National Register study; and (2) BBS's
interest in the Education Building fails to qualify as fee simple
title due to the Town's retention of significant rights in the
property.  These claims are intertwined with the listing process
established pursuant to the NHPA, but this is insufficient to
justify exercising federal jurisdiction.  Rather, the plaintiffs'
must demonstrate that all three of the requirements set forth in
Grable are satisfied.  In my opinion, they have not done so for
the reasons stated below.[8]

        The Issue of the Propriety of the Transfer of Title

        On its surface, the plaintiffs' allegation that the Town
transferred title to the Education Building to BBS in order to
prevent the Keeper from including the proposed "Historic
District" in the Register might seem to implicate a substantial

_____

        [8] It bears noting that jurisdiction may be lacking under the
well-pleaded complaint rule on the ground that any federal issues
in this case arise only from the plaintiffs' anticipation of a
defense to the CEPA claim based on federal law.  See Louisville &
Nashville Railroad v. Mottley, 211 U.S. 149, 152 (1908)(federal
jurisdiction cannot be based on plaintiff's anticipation of a
federal law defense).  I do not discuss this possibility in the
text because the defendants do not take this view of the matter
and I find jurisdiction to be lacking for other reasons.

federal interest.  Careful study of the NHPA and its implementing
regulations leads me to conclude, however, that any federal
interest in the transfer of title is insufficient to warrant the
exercise of jurisdiction over the plaintiffs' CEPA claim, even
assuming the transfer was motivated to block the Keeper from
listing the property in the Register.

     To begin with, the NHPA does not apply to projects that lack
federal involvement.  As the Second Circuit has observed, the key
section of the NHPA, section 106, is essentially a "stop, look
and listen" provision that requires federal agencies, before
approving funds or granting a license to any federal or
federally-assisted project, to consider the potential impact of
the project on properties that are listed or eligible for listing
in the National Register.  See 16 U.S.C. § 470f; Bus. & Residents
Alliance of E. Harlem v. Jackson, 430 F.3d 584, 591 (2d Cir.
2005).[9]  If such properties exist, the agency must submit the
project for review and comment by the Advisory Council on
Historic Preservation ("ACHP"), which is authorized to promulgate

---

     [9]  Some courts of appeals have recognized a cause of action
under the NHPA against federal agencies.  See, e.g., Boarhead
Corp. v. Erickson, 923 F.2d 1011, 1017 (3d Cir. 1991); Vieux
Carre Prop. Owners, Residents & Assocs., Inc. v. Brown, 875 F.2d
453, 458 (5th Cir. 1989).  But see San Carlos Apache Tribe v.
United States, 417 F.3d 1091, 1096 (9th Cir. 2005) (actions to
enforce the NHPA must be brought under the Administrative
Procedure Act).  The Second Circuit has not addressed the issue.
See Bus. & Residents Alliance of E. Harlem, 430 F.3d at 590 &
n.7.

regulations that "govern the implementation of [section 106]."
16 U.S.C. § 470s.  In the absence of federal involvement, as the
defendants correctly emphasize, the NHPA places no restrictions
on owners of historic property, even if the property is listed in
the Register.  36 C.F.R. § 60.2 ("Listing of private property on
the National Register does not prohibit under Federal law or
regulation any action which may otherwise be taken by the
property owner with respect to the property."); W. Mohegan Tribe
v. New York, 246 F.3d 230, 232 (2d Cir. 2001) ("[T]he law makes
it clear that violations of the NHPA can only be committed by a
federal agency."); Moody Hill Farms Ltd. Partnership v. United
States Dep't of Interior, 205 F.3d 554, 562 (2d Cir.
1999)("listing on its own does not impose any burdens on
plaintiffs' use of their property.  National listing constrains
only the ability of departments of the federal government to take
action affecting a listed property without first considering the
effect of that action on the property.").

Research discloses two cases in which private parties sued
in federal court on the basis of the NHPA to stop a project that
lacked federal involvement.  In Edwards v. First Bank of Dundee,
534 F.2d 1242 (7th Cir. 1976), the plaintiffs sought to enjoin a
bank from demolishing a building listed in the National Register
without first obtaining an opinion from the ACHP (among other
things).  The jurisdictional claim advanced by the plaintiffs was

13

similar to the one advanced here.  As the court of appeals put
it, the plaintiffs claimed that jurisdiction was available under
the NHPA to prevent the bank from "frustrating or preempting the
[ACHP's] responsibilities to prevent violation of the historical
protections provided for under [the NHPA]."  See id. at 1245.
The district court granted the plaintiffs' motion for a
preliminary injunction, but the court of appeals reversed and
ordered the action dismissed for lack of subject matter
jurisdiction.  See id. at 1245-46.  In doing so, the court of
appeals specifically rejected the jurisdictional theory espoused
by the plaintiffs.

        In Canfora v. Olds, 562 F.2d 363, 364-65 (6th Cir. 1977),
suit was brought against the Board of Trustees of Kent State
University to enjoin the construction of a gymnasium on the site
of the confrontation between the Ohio National Guard and Kent
State students protesting the Vietnam War that resulted in the
deaths of four students.  The plaintiffs claimed that the court
had jurisdiction to enjoin construction activities on the
historic site while it was being considered for listing under the
NHPA.  The district court dismissed the action for lack of
subject matter jurisdiction and the court of appeals affirmed.[10]

        Because the NHPA does not apply to construction projects

--------

        [10]  The plaintiffs cite no case, and none has been found,
that adopts their jurisdictional theory.

affecting historic properties in the absence of federal involvement, preservationists must rely on state and local laws to protect properties from unreasonable destruction, as the plaintiffs do here.  The legislative history of the 1980 amendments to the NHPA clearly shows that Congress intended this to be the case.  As explained in the House Report that accompanied the successful bill, Congress wanted to strengthen the role of state programs for protecting historic resources, which had grown along with the historic preservation movement following the enactment of the NHPA in 1966, so that the states would be "the full 'partner' in the Federal program envisioned by Congress in the 1966 Act."[11]  Consistent with this objective, the owner consent requirement at issue here was adopted to alleviate due process concerns, not because the NHPA or its implementing regulations would place restrictions on owners of properties included in the Register (as we have seen, they do not), but because state and local laws imposing such restrictions could be triggered automatically by Register listing.[12]  The owner consent

_____

[11] See H. R. Rep. No. 96-1457, at 23 (1980), reprinted in 1980 U.S.C.C.A.N. 6378, 6386.

[12] See id. at 27, reprinted in 1980 U.S.S.C.A.N. at 6390:
The Committee recognizes that listing on the National Register does not, under this Act or under the 1966 Act, restrict in any way what a private property owner can do with his or her property.  The Committee also recognizes, however, that other State and local laws for the protection of historic properties could be triggered automatically by National Register listings.

provision was not intended to encourage the adoption of owner consent provisions at the state or local level.[13]  Rather, as the House Report states, Congress recognized that "it is at the State and local levels of government, which have the police powers of zoning and other related regulatory tools, where more protective controls are appropriate."[14]

Given the NHPA's inapplicability to the Blue Back Square project, and the foregoing legislative history, I conclude that the transfer of title from the Town to BBS does not support the exercise of federal jurisdiction over the plaintiffs' CEPA claim.[15]

The Issue of Fee Simple Title

Whether BBS holds "fee simple title" to the Education Building, and thus owns the building for Register listing purposes,[16] clearly presents an issue of federal law.  Under National Register regulations, however, this issue is to be

---

[13] See id.

[14] See id.

[15] It is also worth noting that the existence of a valid objection to listing on the Register has little effect under federal law.  The constraints on federal agency action apply regardless of whether property is actually listed or merely eligible for listing.  See 16 U.S.C. § 470f.  Because these constraints would apply even if a town transferred title to a private owner to manufacture an objection, such a transfer would have no federal consequences.

[16] See 36 C.F.R. § 60.3(k)(defining property owner as person or entity "holding fee simple title to the property)

determined by the SHPO from official land records or tax records.
See C.F.R. § 60.6(c).  Plaintiffs emphasize that the Keeper can
review the SHPO's determination of property ownership.  But the
regulations do not suggest that the Keeper is supposed to review
the SHPO's determination for conformity with a federal standard
of fee simple title.  Indeed, as the defendants argue, it is
unlikely that the NHPA or its implementing regulations were
intended to usurp the states' traditional authority to define
property rights, particularly since the NHPA does not itself
regulate private relationships.   See, e.g., Phillips Petroleum
Co. v. Mississippi, 484 U.S. 469, 484 (1988) ("We see no reason
to disturb the general proposition [that] the law of real
property is, under our Constitution, left to the individual
States to develop and administer." (internal quotation marks
omitted) (alteration in original)); Oregon ex rel. State Land Bd.
v. Corvallis Sand & Gravel Co., 429 U.S. 363, 378 (1977) ("Under
our federal system, property ownership is not governed by a
general federal law, but rather by the laws of the several
States.").

Because the issue of fee simple title turns on state
property law, adjudicating the issue in this court cannot be
justified in terms of the benefits thought to be offered by a
federal court as a forum for determining issues of federal law.
What constitutes "fee simple title" may well vary from state to

17

state, and federal judges have no special expertise in state
property law.  Accordingly, I conclude that the presence of this
issue does not provide a basis for exercising jurisdiction over
the plaintiffs' CEPA claim.[17]

The Balance of Judicial Responsibilities

The plaintiffs have also failed to demonstrate that
exercising jurisdiction would not upset the existing balance of
state and federal judicial responsibilities.  They argue that
Congress intended the NHPA to be the subject of litigation in
federal courts, citing cases inferring a private cause of action
against federal agencies from the statute's attorneys' fees
provision, 16 U.S.C. § 470w-4.  See Bus. & Residents Alliance of
E. Harlem, 430 F.3d at 590 & n.7.  But research discloses no
case inferring a cause of action under NHPA against private
parties, much less parties whose activities lack federal
involvement.  Congress could have provided for such a cause of
action; it had an opportunity to do so when it enacted the 1980

_____

[17]   The plaintiffs suggest that whether property that is
only eligible for listing is nonetheless "under consideration for
listing" within the meaning of CEPA also presents a federal
question justifying the exercise of jurisdiction. As defendants
correctly point out, however, neither the NHPA nor its
implementing regulations uses the term "under consideration for
listing."  The term is a creation of Connecticut law and must be
construed as a matter of state law, although by reference to
federal law.  See, e.g., Hill/City Point Neighborhood Action
Group v. City of New Haven, No. CV 0437784, 2000 WL 728841, at
*4-7 (Conn. Super. Ct. May 18, 2000); 1984 Conn. Op. Atty. Gen.
292, 1984 WL 249235, at *2 (Conn. A.G. June 28, 1984).

amendments to the NHPA.  As discussed above, however, it chose to promote reliance on state and local laws protecting historic properties, and the regulations promulgated by the Department of the Interior are fully consistent with this preference.  See 36 C.F.R. § 60.2 (stating that the National Register is a "guide to be used by Federal, State, and local governments . . . to indicate what properties should be considered for protection from destruction" and that "[l]isting of private property on the National Register does not prohibit under Federal law or regulation any actions which may otherwise be taken by the property owner with respect to the property").

Plaintiffs also argue that the exercise of jurisdiction in this case would have a minuscule impact on the balance of judicial responsibilities because cases under Conn. Gen. Stat. § 22a-19a are likely to be rare.  Under Grable, the infrequency of cases brought under § 22a-19a counts in favor of exercising jurisdiction.  However, the infrequency of quiet title actions raising tax issues was but one consideration in Grable.  As defendants argue, exercising jurisdiction in this case could threaten to open federal courts to a bevy of other state law actions raising minor issues of federal law.

III. Conclusion

For the foregoing reasons, the court lacks subject matter jurisdiction over the plaintiff's claim for relief under CEPA.

19

Dated at Hartford, Connecticut this 18th day of August 2006.


                                             /s/
_____
                                  Robert N. Chatigny
                            United States District Judge



_____